STOKER, Judge,
dissenting.
With respect I dissent. While the majority view in this case, which affirms the trial court’s view, is quite plausible and persuasive, I nevertheless disagree with that view. The majority opinion correctly sets forth the respective positions of the parties concerning the meaning of the paragraph of the letter of November 18, 1985 which reads: “Finally, Toce’s acceptance is predicated on Great Southern timely providing a rig to drill the subject well during the early part of December so that drilling operations are completed before the end of the year.”
In my view Great Southern’s interpretation is correct. Under that interpretation the paragraph did not impose an obligation on Great Southern to commence drilling or complete drilling at any particular time. I am convinced that the paragraph was written by Toce for the purpose of giving it an escape clause. It meant that if Great Southern did not commence drilling the Beyt well in time to complete it by the end of the year 1985, Toce would no longer be bound by the contract, and Toce could contract with another party to drill the Beyt well. As noted by the majority, this is exactly what Toce did.
Both parties to this litigation agree that the November 18, 1985 letter forms part of the contract between them. The contract, of course, is the law between the parties. If Toce intended to bind Great Southern to drill before the end of 1985, it had ample opportunity to see to it that the formal contract or the letter supplement said so in plain and clear language. Toce had two opportunities to do so. The standard IADC printed contract forwarded by Great Southern to Toce contains paragraph 2 which provides for a commencement date. As proposed and filled out by Great Southern, paragraph 2, designated “COMMENCEMENT DATE,” provides: “Contractor [Great Southern] agrees to use its best efforts to commence operations for the drilling of well by the_day of_, 19_, or predicated by rig availability _” The underscored words were typed into the blank indicated and no specific commencement date was specified. Attached to the printed IADC contract was a typewritten page of six “Special Provisions” in the form of an addendum prepared by Great Southern.
Upon receipt of the contract from Great Southern, Toce made what amounts to a counterproposal. It added to the special provisions portion of the contract three additional paragraphs, or provisions. These are paragraphs 7, 8 and 9 referred to in the Schiller letter of transmittal of November 18,1985. Toce proposed no change in paragraph 2 of the printed contract to specify a drilling commencment date, and it did not add a special provision to specify a commencement or completion date. According to the contract, without the letter, commencement was left open except for the condition that commencement was “predicated by rig availability.”
The second opportunity Toce had to provide for a commencement and completion date was in the letter it drafted on November 18, 1985 forwarding its counterpro-posal. Had Toce wanted to make certain what it now urges was its intention, it *1093 could have unambiguously provided that time was of the essence and that Great Southern was bound to commence drilling by a specific date in December and complete its work by December 81, 1985 or such earlier date as it desired. It did not express any such intention in the letter language adopted. Had Toce wished to make such a binding obligation, it properly should have redrafted paragraph 2 of the printed contract. By remaining as it was, paragraph 2 negated any intention of the parties that commencement was “predicated” on anything other than the availability of rig. This left the matter up to Great Southern. A careful draftsman would not have left paragraph 2 as it was if it did not express Toce’s intentions, and (as it appears) was directly contrary to those intentions.
Since I conclude that the letter paragraph in question does not mean what Toce says it means, what does it mean? To me it means nothing more than a conditional acceptance. Great Southern could have fulfilled that condition by beginning drilling operations at such a time that it would have been more than likely to complete its drilling by the end of the year. If Great Southern delayed beyond such a time that it would not have been able to complete its work before the end of the year, Toce would no longer be bound by the contract; and it could contract with another driller, which it did.
The interpretation I place on the paragraph in question in the November 18 letter is a reasonable interpretation and is consistent with paragraph 2 of the printed contract. Consequently, no further search should be made to discover the intent of the parties. LSA-C.C. art. 2046. The most that could be said about the subject letter paragraph is that it is ambiguous which I do not think is so. However, in that event the language should be construed against Toce because its representative wrote it. LSA-C.C. art. 2057.
Toce urges that the letter paragraph in question does not constitute an escape clause because there would have been no need to provide it for the reason that it already had such a right as provided by paragraph 6.3 in the printed contract form. I do not read paragraph 6.3 to grant Toce the unfettered right to recede from the contract. Abrogation of the contract is strictly conditioned. Either party may terminate the contract upon total loss or destruction of the rig or a major breakdown. If Toce sought to terminate the contract without such reasons, it would have incurred monetary penalties or obligations in favor of Great Southern. I do not regard paragraph 6.3 as an escape clause in the sense provided by the letter paragraph in question.
As I view this case, there is no need to consider the remaining specifications of error asserted by defendant-appellant (alleged errors 1, 3 and 4). With reference to the parol evidence in the record, it is my opinion that it does not necessarily prove Toce’s case. Whatever Toce’s management may have thought or intended is not probative. What was written for them is. There is testimony on behalf of Great Southern that it made known to Toce the clear possibility, if not probability, that Great Southern would not have a rig available in time to meet Toce’s hope of completing drilling before the year 1985. Under the circumstances, even if Toce made known to Great Southern that it was imperative that drilling be completed before the end of the year, both parties were gambling that Great Southern would be able to fulfill Toce’s hopes. Toce claims that Great Southern had a rig available to timely commence drilling. The majority concludes as a matter of fact that a rig had indeed been available and Great Southern breached its agreement ¿nd its own operating procedure by sending it elsewhere. I disagree that the evidence establishes this as a fact.
I would find that there was no obligation to commence or complete drilling operations by December 31, 1985. Accordingly, there was no breach by Great Southern. Therefore, in my opinion the judgment of the trial court is clearly erroneous and should be reversed.
*1094 For the foregoing reasons I respectfully dissent.